UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| THOMAS ALAN SERGENT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:16-CV-051-JD |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

In this case, plaintiff Thomas Alan Sergent appeals the denial of his claim for Social Security Disability Insurance Benefits. For the following reasons, the Court remands this matter to the Commissioner for further proceedings consistent with this opinion.

### I. FACTUAL BACKGROUND

**A. Procedural Background**

Sergent sought disability insurance benefits on October 15, 2014, alleging an onset date of February 12, 2013, which was amended to April 17, 2013. (Tr. 195, 210). Sergent indicated that he was unable to work due to bilateral upper extremity radiculopathy, tinnitus, degenerative disc disease of the cervical spine, headaches, and post-traumatic stress disorder ("PTSD"). Sergent's application was denied initially and on reconsideration. (Tr. 102, 132-38). An Administrative Law Judge ("ALJ") held a hearing, during which Sergent appeared with counsel and testified, along with a vocational expert ("VE") who testified. (Tr. 34-88). The ALJ decided that even though Sergent suffered from the severe impairments of spinal disorder, headache disorder, and anxiety disorder or PTSD, he could still perform light work in a quiet environment

1

that was limited (in relevant part) to simple routine repetitive tasks that were not performed at a production rate pace and involved no more than occasional decision making, few changes in the work setting, occasional interaction with coworkers and supervisors, and no tandem tasks or interaction with the general public. (Tr. 15-28). One of the hypotheticals posed to the VE considered these same limitations (which were ultimately contained in Sergent's assigned residual functional capacity ("RFC")[1]), and the VE testified that such a restricted individual could still perform work as a cleaner, packager, and marker. Thus, the ALJ determined that Sergent was not disabled since he could perform these other jobs. The Appeals Council denied review, making the ALJ's decision the final decision of the agency. (Tr. 1-3). Sergent filed a timely complaint seeking judicial review of that decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

**B. Medical Background**

Sergent was born on November 28, 1963 and is currently 53 years old. (Tr. 89). Over his lifetime, he has had three main skilled careers ranging from medium to very heavy exertional levels. Initially, he worked in building maintenance. (Tr. 82). Sergent was later a combat engineer and heavy equipment horizontal engineer while serving in Iraq and Afghanistan. (Tr. 44). Following his service overseas, Sergent worked as a firefighter/security officer. (Tr. 44-46).

While the subject of Sergent's appeal concerns his mental limitations, it was Sergent's physical limitations that prevented him from continuing work as a firefighter and security officer. (Tr. 45). In March 2012, diagnostic imaging of Sergent's spine documented mild disc disease and early osteopenic changes of the cervical spine. (Tr. 320). Sergent underwent a consultative

---

[1] RFC is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

medical examination in November 2014, which reflected that he had a tender cervical spine with decreased range of motion. (Tr. 869-70). In addition to noting his mental and emotional conditions, this report noted that Sergent suffered from neck pain and a history of degenerative joint disease of the cervical spine. In December 2014, J.V. Corcoran, M.D., conducted a physical RFC assessment and found that Sergent could perform restricted light work. (Tr. 95-100). Dr. Corcoran's assessment was affirmed by B. Whitley, M.D., in February 2015. (Tr. 116). However, Sergent does not challenge the ALJ's assessment of his physical limitations, and therefore, the Court turns to his documented mental limitations.

It is undisputed that Sergent suffers from PTSD. Sergent testified that his PTSD bothers him the most, and he was medically retired from the National Guard primarily on account of his PTSD. (Tr. 43, 53). Because he doesn't handle uncontrolled environments or unfamiliar people well, he rarely leaves his house. (Tr. 53, 55, 57, 65-67, 76, 79). Sergent wasn't even comfortable during his disability hearing because it was held in a government building that he described as a "high-value target." (Tr. 55). Sergent described being in public as "nerve-racking," and explained that loud noises or situations that remind him of combat or his war enemies "trigger" his PTSD symptoms. (Tr. 67, 71-73). Sergent indicated that once he becomes anxious from a triggering event, it can take him several hours to recover to a normal controlled state. (Tr. 56). Dr. Krage, Sergent's long-time psychologist, prescribed medication to treat Sergent's PTSD, but Sergent was told that he did not have to take it after reporting that the medication made him feel "numb" and "stupid," and it interfered with his needed ability to feel in control and alert. (Tr. 54, 72). Sergent continues to engage in talk therapy once a month, and as recommended by Dr. Krage, Sergent attends "Pets and Vets" on a weekly basis with his service dog. (Tr. 53-54, 69). Sergent explained that his service dog really assists with keeping his anxiety down and he feels

3

comfortable attending a closed meeting designed only for veterans suffering from PTSD. (Tr. 56, 69).

Sergent has routinely been documented by doctors as being oriented, neatly groomed and dressed, cooperative and pleasant, coherent as to thought process, good as to insight and judgment, and without memory issues or suicidal/homicidal ideations. (Tr. 484, 488-89, 746-47, 763, 884-887). However, some of these same medical records and various others demonstrate that Sergent has continued to experience various serious symptoms of his anxiety and PTSD. (Tr. 458, 484-85, 488, 490-92, 746, 767, 769, 886). In January 2014, Sergent presented for a PTSD evaluation which indicated that he was easily distracted, apprehensive, anxious, impaired as to judgment, had poor insight, and it noted that he suffered from moderate to severe impairment in psychological, social, and occupational functioning, and moderate to severe impairment in judgment and impulsivity. (Tr. 780-82).

In December 2014, Amy S. Johnson, Ph.D., conducted a consultative examination and concluded that Sergent had only mild restriction in performing activities of daily living and moderate difficulties in maintaining social functioning and concentration, persistence or pace. (Tr. 94). Further, Dr. Johnson found that Sergent could understand, remember, and follow simple instructions, but he was limited to work that involved brief, superficial interactions with fellow workers, supervisors, and the public. (Tr. 99). Additionally, Dr. Johnson deemed that within these parameters and in the context of performing simple, routine, repetitive, concrete, tangible tasks, Sergent was able to sustain the necessary attention and concentration to perform work with reasonable pace and persistence. (Tr. 99). B. Randal Horton, Psy.D., reviewed Sergent's file and affirmed Dr. Johnson's assessment in February 2015. (Tr. 109, 114).

Dr. Krage completed a mental impairment questionnaire in September of 2014. (Tr. 337-40). Dr. Krage believed that Sergent had mild restrictions in his activities of daily living and moderate difficulties in social functioning and maintaining concentration, persistence or pace. (Tr. 340). Dr. Krage also believed that Sergent was moderately limited in five of seventeen listed areas of mental functioning, as well as markedly limited in his ability to maintain attention and concentration for extended periods. (Tr. 339). About a year later, Dr. Krage reported that Sergent's condition varied from being "moderately to severely impaired by PTSD," that despite treatment "his PTSD symptoms have remained constant with little to no improvement," and that his "ability to effectively interact with others is significantly impacted by his internal distress and can be further exacerbated due to normal daily stressors." (Tr. 888-89).

## II.     STANDARD OF REVIEW

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial-evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility or substitute the Court's own judgment for that of the

Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; she may not ignore an entire line of evidence that is contrary to her findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level [her] analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, she must provide a "logical bridge" between the evidence and her conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

### III. DISCUSSION

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4). These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

20 C.F.R. § 404.1520(a)(4); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. 20 C.F.R. § 404.1520(a)(4)(iii). However, if a listing is not met or equaled, the ALJ must assess the claimant's RFC between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Sergent raises several arguments in support of his request for remand. He argues that the ALJ erred in failing to find that Sergent met listing 12.06 based on his anxiety/PTSD. His remaining arguments focus on the ALJ's evaluation of his RFC, as he contends that the ALJ improperly assessed his credibility and overlooked evidence of further restrictions which resulted in an incomplete RFC. This incomplete RFC was then used to pose incomplete hypothetical questions to the VE.

The Court agrees that the ALJ's credibility assessment was insufficiently articulated and that the ALJ overlooked evidence of further mental limitations caused by Sergent's PTSD. Because these shortcomings affected the listing and RFC analyses, these issues will need to be reconsidered on remand.

### A. Credibility Assessment & RFC

Sergent challenges the ALJ's finding that his statements concerning the intensity, persistence and limiting effects of his mental impairments were "less than reliable." (Tr. 22). As

explained below, the Court agrees that the reasons provided by the ALJ to question Sergent's credibility are insufficient.

Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the Court will not overturn an ALJ's credibility determination unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). The ALJ's decision must, however, provide specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and must be sufficiently specific or clearly articulated so the individual and any subsequent reviewers can assess how the adjudicator evaluated the symptoms. SSR 16—3p (superseding SSR 96–7p)[2]; *see also Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013). An ALJ's failure to give specific reasons for a credibility finding, supported by substantial evidence, is grounds for remand. *Pepper*, 712 F.3d at 367; *Myles v. Astrue*, 582 F.3d 672, 676 (7th Cir. 2009). An ALJ may also not "play doctor" by ignoring relevant evidence and substituting her own judgment. *Myles*, 582 F.3d at 677-78. The Court finds that the ALJ committed those errors here, and that as a result, the credibility finding is not supported by substantial evidence.

First, the ALJ questioned Sergent's credibility because of his "non-compliance with prescribed psychiatric medication [which is] unsupportive of the mental health symptomology alleged." (Tr. 22). However, in make this finding, the ALJ failed to: (1) cite any medical record indicating that Sergent was not complying with a prescription regime; and (2) address the

---

[2] Last year, the Social Security Administration issued SSR 16-3p, which supersedes SSR 96-7p. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). SSR 96-7p referred to a claimant's "credibility," but SSR 16-3p removed that term in order to "clarify that subjective symptom evaluation is not an examination of the individual's character." SSR 16-3p, 2016 WL 1119029, at *1. The new SSR was issued after the ALJ's decision in this matter, however, it was only a clarification of the law and not a change in the law. Regardless, under either SSR version the outcome in this case would be the same.

pertinent reasons Sergent provided for not taking psychiatric medication. Sergent's testimony indicated that his doctor allowed him to refrain from taking medication due to the side effects. As to those side effects, Sergent explained that he did not like the medication's numbing effect and that not taking it was his way of maintaining control. Sergent's wife corroborated his testimony by explaining that Sergent refused to be on medication anymore because "he feels that it takes away from his ability to be accurately aware of his surroundings." (Tr. 264). However, when the ALJ relied solely on this letter with respect to Sergent's alleged non-compliance, the ALJ said nothing about the reason for Sergent's declining to take psychiatric medications. Thus, the ALJ erred in failing to at least consider this explanation before discrediting the testimony about Sergent's mental limitations based on his lack of treatment or compliance. *Myles,* 582 F.3d at 677 (stating that "the ALJ was required by Social Security Rulings to consider explanations for instances where [the plaintiff] did not keep up with her treatment"); *Craft,* 539 F.3d at 679.

Moreover, the ALJ found that Sergent's allegations regarding social anxiety were "less than reliable" partially because Sergent is able to interact appropriately with others. (Tr. 22). As examples, the ALJ noted that Sergent takes family vacations, walks with his wife, and attends dog training. (Tr. 22). Yet the ALJ did not provide a valid explanation for equating Sergent's ability to perform daily tasks with those select few people he trusts, with Sergent's ability to perform a full-time job week in and week out with occasional interactions with supervisors and co-workers without exceeding acceptable levels of distraction. In this case, the record demonstrates that on account of his PTSD, Sergent avoids crowds, responds poorly to loud noises such as fireworks, and strongly prefers situations where he can control his environment. (Tr. 55, 71, 94, 250, 262, 264, 417, 490-92). Additionally, the record indicates that Sergent can lose control when confronted by situations reminding him of combat. (Tr. 72, 74-76, 491). Thus,

9

the ALJ's finding that (absent Dr. Krage's most recent report) Sergent's clinical "record is without any other objective indicia . . . of the claimant being incapable of interacting appropriately" is simply incorrect. (Tr. 25). In essence, in assessing Sergent's credibility, the ALJ ignored the vast amount of documentation indicating that Sergent's anxiety and PTSD symptoms are triggered when he is not around those he trusts or he is placed in an environment where he does not feel in control and secure. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may consider a claimant's daily activities when assessing credibility, but ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence.").

As if this were not enough to demonstrate the inadequacy of the ALJ's credibility finding (which no doubt ultimately affected the RFC), the Court notes that the ALJ's disbelief in Sergent's reported difficulty interacting with others is based on some evidence that doesn't even exist.[3] Additionally, two more problems exist with the credibility determination: (1) the ALJ improperly cited Sergent's retirement as "strong indicia that his unemployment is secondary to factors other than his alleged health complaints" (Tr. 22)—without acknowledging that Sergent's "retirement" was from the National Guard on account of medical reasons, and primarily his PTSD (Tr. 411, 413, 417); and (2) the ALJ inappropriately played doctor by classifying all, except one of Sergent's mental status examinations as "consistently and routinely" "normal" and "benign" (Tr. 23-25) despite various examinations demonstrating that Sergent continued to suffer from mild severely depressed mood, overwhelming moments of emotion, anxiety and stress,

---

[3] The ALJ stated that in September 2014, "the claimant reported no difficulty getting along with others . . . and that he was without problem as to concentration (Exhibit 5F/59)" (Tr. 19, 24). The Court, however, is unable to locate these statements based on the citations provided by the ALJ. Moreover, it should be noted that at this same point in time, Dr. Krage *actually* indicated that Sergent was moderately limited in maintaining social functioning and concentration. (Tr. 340).

10

nightmares and poor sleep, hypervigilance, triggers to anxiety, and detachment from others and avoidance of crowds. (Tr. 458, 484-85, 488, 490-92, 746, 767, 769, 886). The ALJ committed error by failing to acknowledge this relevant competing medical evidence and failing to explain why the evidence relied on was more persuasive in supporting the ALJ's conclusion that Sergent's mental status examinations were consistently normal.[4] *Myles*, 582 F.3d at 677-78. As a result, the Court is unable to uphold the ALJ's credibility finding due to an inadequate explanation of the record facts that supported further limitations with respect to Sergent's anxiety disorder and PTSD.

Ultimately, the ALJ's insufficiently supported assessment of the claimant's testimony and credibility was relied upon to determine Sergent's RFC. (Tr. 22) (finding that "the record contains inconsistencies as to reports supplied by the claimant, which indicates that the information supplied by the claimant may be less than reliable . . . [c]onsequently, the undersigned finds that [the] record fails to establish a more restrictive RFC than the one found assessed herein."); *see* 20 C.F.R. § 404.1545(a). Therefore, in assessing Sergent's RFC on remand, the ALJ must reconsider the weight to be accorded Sergent's subjective complaints and then decide whether based on the record evidence Sergent could sustain a full-time work schedule, despite the problems caused by the totality of his impairments, including his anxiety and PTSD. *See* SSR 96-8p.

**B. Other Issues to be Considered on Remand**

The ALJ found that given the RFC determination, Sergent could not perform his past work, but he could perform jobs that existed in significant numbers in the national economy,

---

[4] On remand, the ALJ will need to reconsider the weight to be afforded to treating psychologist Dr. Krage's opinions given that Dr. Krage's records may not be as inconsistent with the mental status exams as originally opined by the ALJ.

such as a cleaner, packager, or marker. (Tr. 27). Sergent claims that the ALJ's failure to sufficiently consider all of his limitations in the RFC and hypothetical questions posed to the VE resulted in unreliable VE testimony.

The Court agrees. Here, without a proper credibility determination and RFC evaluation, steps four and five cannot be properly assessed. *See Young*, 362 F.3d at 1000 (the ALJ must determine the claimant's RFC before performing steps 4 and 5 because a flawed RFC usually skews questions posed to the VE); 20 C.F.R. §§ 404.1520, 404.1545; SSR 96-8p. In other words, given the unsupported reasoning regarding the ALJ's RFC determination, the Court is unable to determine whether the questions posed to the VE were adequate and inclusive of Sergent's actual limitations, and whether the VE's testimony adequately established that Sergent could perform other work.[5] *See Jelinek*, 662 F.3d at 813 (confirming that the ALJ must provide vocational experts with a "complete picture of a claimant's residual functional capacity.").

Lastly, on remand, the ALJ shall reexamine whether consideration of the omitted (and mischaracterized) evidence supporting further mental health restrictions affected Sergent's ability to meet listing 12.06, which in relevant part requires at least two "marked" limitations

---

[5] Admittedly, the Seventh Circuit has occasionally concluded that a VE has familiarity with the claimant's limitations, despite any gaps in the hypothetical, when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations and the VE considered that evidence when indicating the type of work the claimant is capable of performing. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, n. 5 (7th Cir. 2010) (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009); *Young*, 362 F.3d at 1003; *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Ragsdale v. Shalala*, 53 F.3d 816, 819-21 (7th Cir. 1995); *Ehrhart v. Sec'y of Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992)). This exception does not apply here, since the VE never indicated having reviewed Sergent's medical records, nor did he indicate in his responses having relied on those records or the hearing testimony. Rather, the VE's attention was on the limitations of the hypothetical person posed by the ALJ, rather than on the record itself or the limitations of the claimant himself. *Id*. (citing *Simila*, 573 F.3d at 521; *Young*, 362 F.3d at 1003).

with respect to activities of daily living, maintaining social functioning, or maintaining concentration, persistence, or pace. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.06B.

## IV. CONCLUSION

For the reasons stated above, the Court **REVERSES** the Commissioner's decision and **REMANDS** this matter to the Commissioner for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: March 8, 2017

/s/ JON E. DEGUILIO
Judge
United States District Court